GEORGE P. LEAVITT, *as Guardian of the person and estate of John H. Leavitt, an insane person,* v. BENJAMIN FILES.

MORTGAGE — *Foreclosure — Sale — Insanity of Mortgagee — Insufficient Petition.* L. borrowed a sum of money from F., and gave him a mortgage on real estate as security. Default was made by L., and F. regularly obtained a judgment foreclosing the mortgage and decreeing a sale of the land to satisfy the debt. In due time, and upon the required notice, the land was sold to F. at a sale which was open and fair. The guardian of L. brought an action alleging the foregoing facts, and that at the time the loan was made, and ever since, L. was insane, and that F. knew of his insanity, but that the transaction was *bona fide* on the part of F. He claims that the transaction was in-

valid on account of his ward's insanity, but instead of offering to re-
store the amount paid, and asking that the contract and proceedings
be annulled, he averred that the land was sold for less than its value;
and he prayed a recovery of the difference between the selling-price
and the actual value. *Held*, That the petition was insufficient, and
that the plaintiff was not entitled to the relief prayed for.

*Error from Bourbon District Court.*

On November 13, 1884, the plaintiff in error, who was
plaintiff below, filed a petition in the district court of Bourbon
county, alleging:

"Under and by virtue of proceedings commenced in the pro-
bate court of Bourbon county, Kansas, one John H. Leavitt,
who in that proceeding was called Holland Leavitt, was on
the 16th day of May, 1884, by the verdict of a jury im-
paneled to try that issue, declared an insane person and
incapable of managing his affairs. This plaintiff was there-
upon by said court appointed guardian of the person and
estate of the said John H. Leavitt, and duly qualified as such
by taking the oath and giving the bond required by law, and
he still is such guardian; the said John H. Leavitt being at
that time, by order of said court, committed to the asylum
for the treatment of insane persons, at Osawatomie, Kansas,
where he now is.

"The plaintiff further states, that on December 1, 1881, and
for several years prior thereto, the said John H. Leavitt was
and had been the owner of a parcel of real estate in Bourbon
county, Kansas, described as follows, to wit: The southeast
quarter of section No. thirty-two, township No. twenty-six
south, of range No. twenty-five east, containing one hundred
and sixty acres. The said John H. Leavitt was then and is
now an unmarried man. On December 1, 1881, he executed
his promissory note to the defendant, Benjamin Files, for the
sum of $975, due twelve months thereafter, and with interest
at the rate of 10 per cent. per annum from date. The said
John H. Leavitt also executed a mortgage of same date upon
said real estate above described, to secure the payment of said
note. The said John H. Leavitt failed to pay said note at its
maturity, and immediately after the maturity thereof the said
Benjamin Files, the defendant herein, commenced an action
in this court for the purpose of obtaining a judgment on said
note, and to foreclose said mortgage on said real estate. Such
proceedings were thereafter had in said action, as that on the

19th day of May, 1883, judgment was rendered therein in favor of said Files and against said John H. Leavitt for the sum of $1,122.65, and costs of suit, taxed at $43.25, and for foreclosure of said mortgage, and directing a sale of real estate to pay the judgment thus rendered within six months thereafter, if the said judgment was not paid before that time; appraisement of said real estate having been waived in said note.

"Afterward the said Benjamin Files procured an order of sale to be issued on said judgment; said real estate was advertised for sale by the sheriff of Bourbon county, and sold by him to said Benjamin Files, on January 24, 1884, at and for the price and sum of $1,050. And afterward said Files procured an order of this court, confirming said sale and directing the sheriff of Bourbon county to make to him a deed to said real estate; which deed was thereafter made by said sheriff, and delivered to said Files, who caused the same to be recorded in the office of the register of deeds of Bourbon county. Said Files also shortly thereafter took possession of said real estate. Plaintiff is advised, and charges, that the said sum of $1,122.65, for which judgment was rendered in favor of said Files on May 19, 1883, included, in addition to the principal and interest of said note, some taxes which said Files claimed to have paid on said real estate. Said plaintiff is not advised, and does not know, whether the sum set forth in said note was actually and *bona fide* due from said John H. Leavitt to said Files, or not, but he is willing to so treat and consider it. The plaintiff further states, that the said John H. Leavitt did not file any answer, or make any appearance whatsoever, in the case of the defendant Files against him, either before or after judgment, nor did he appear either at the sale of said lands or at the time when the sale was confirmed, as hereinbefore set forth. The plaintiff further states, that the said John H. Leavitt, for many years prior thereto and at the time of the execution of said note and mortgage, had been and was a person of unsound mind, and has so continued up to the present time; that he has, during all of said time, been utterly incapable of appreciating or understanding the transactions which he had with said Files, or the effect thereof, and was wholly unfit, because of unsoundness of mind, to properly conduct and transact such business as was involved between him and said Files. The plaintiff further states, that the defendant Files, during all the time hereinbefore mentioned, from the execution of said note and mortgage to the present time, was fully aware that the said John H. Leavitt was a person

of unsound mind, and utterly incapable of understanding such transactions as were had by said Files with him, as hereinbefore set forth. The plaintiff further states, that the real estate hereinbefore described, at the time it was sold by the sheriff of Bourbon county to said Files, on January 24, 1884, was of the value of $3,200.

" Wherefore, the plaintiff prays judgment against said Files for the sum of $2,034.10, the same being the difference between the value of said real estate and the amount due said Files by virtue of the judgment of May 19, 1883, and the costs thereon."

The defendant demurred to the petition of the plaintiff, stating as a ground of demurrer that the petition did not state facts sufficient to constitute a cause of action against the defendant. At the December Term, 1884, the demurrer was heard and sustained. Leave was given to the plaintiff to amend his petition, but he neglected and refused to amend, and elected to stand upon the petition as filed; and thereupon the court entered judgment in favor of the defendant. This proceeding has been brought, assigning for error the ruling of the court upon the sufficiency of the petition.

*A. A. Harris*, for plaintiff in error.

*J. D. McCleverty*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: According to the allegations of the petition, the plaintiff was not entitled to the relief prayed for. He does not ask to set aside the contract and the proceedings under which the defendant obtained the land, but he virtually seeks a confirmation of these by asking for the difference between the price paid by the defendant for the land at the judicial sale, and the sum which it is alleged to have been then actually worth. From the allegation concerning the *bona fide* character of the indebtedness, we must assume that the original transaction between Leavitt and Files was free from fraud or unfairness. Leavitt borrowed $975 from Files on December 1, 1881, more than two years before he was adjudged to be insane. He

then gave a note payable in one year from date, with interest at 10 per cent., and executed a mortgage upon a tract of land which he owned, to secure the payment of the money. Default being made, the mortgage was foreclosed in May, 1883, and the land was not sold under the decree of foreclosure until January 24, 1884. Leavitt was not adjudged to be of unsound mind until all these proceedings had taken place, nor until May 16, 1884. The proceedings to recover the money, and for the foreclosure as well as in selling the property to satisfy the debt, appear to have been orderly and deliberate. There is no allegation that Files took or sought to take any advantage of Leavitt in any of the proceedings. The sale was not made for more than eight months after the order directing the sale had been made. It was then duly advertised and the land sold to the defendant Files, but there is no intimation that he attempted to stifle competition, or that the sale was not openly and fairly conducted in all respects. There is an allegation that Leavitt was insane and utterly incapacitated to make a contract, and that the defendant had knowledge of his incapacity; but this averment is coupled with one alleging the fairness and good faith of the defendant. Generally speaking, the contract of one insane is invalid, for the reason that the rational consenting mind is lacking. The rules respecting such contracts and the liability thereon, were quite fully considered and stated in *Gribben v. Maxwell*, 34 Kas. 8. That was an action to set aside a conveyance made by an insane person before an inquisition and finding of lunacy. The party with whom he dealt had no knowledge of his incapacity, and made the purchase in good faith and for a reasonable consideration, and it was decided that before the conveyance could be set aside, the consideration received must be returned, or offered to be returned. The result of that consideration and the authorities there cited is, that a contract made as this one was may be set aside if the parties can be placed *in statu quo;* but where it is entered into in good faith and without taking advantage of the lunatic, there should be a tender or an offer to restore the amount paid. It would be inequitable and un-

just to allow him to recover the property and to retain the price paid by the purchaser besides. No offer to return the amount paid by the defendant was made. Indeed, as has been stated, the plaintiff does not repudiate the contract, or seek to have it set aside. He attacks the contract on account of his ward's incapacity, but does not ask that it be annulled. He both repudiates and confirms. He would have the contract and proceedings held sufficient to give the defendant a good title to the land, but too defective to relieve him from liability to Leavitt's estate. In effect, the plaintiff asks the court to modify the contract of purchase made by the defendant, by requiring him to pay $1,150 more than he agreed to pay, and when the contract is so modified, to enforce it. He seeks to compel the making and enforcement of a new and entirely different contract from that made by the parties, and this although the contract has been fully executed. This cannot be done. No obstacle seems to lie in the way of a redemption of the land, as it was sold to, and so far as the record shows, is yet owned by, the defendant. This is the plaintiff's remedy, and in such an action the rights of the insane person may be fully protected without doing injustice to the defendant, who confessedly dealt fairly and in good faith with him.

The judgment will be affirmed.

All the Justices concurring.